**JOHN S. CONNOR, INC.**

v.

**UNITED STATES.**

**C.D. 4621; Court No. R65/12928–8159.**

United States Customs Court.

Dec. 15, 1975.

Busby, Rivkin, Sherman, Levy & Rehm, New York City (Saul L. Sherman and Perla M. Kuhn, New York City, of counsel), for plaintiff.

Rex E. Lee, Asst. Atty. Gen. (Bernard J. Babb, New York City, trial attorney), for defendant.

*On Cross-Motions for Summary Judgment*

WATSON, Judge:

This case is before the court on cross-motions for summary judgment and involves the question of the correct dutiable value of a shipment of alkylate,[1] imported from Germany in 1963 for use in the manufacture of detergents.

The merchandise was classified under item 403.60 of the TSUS,[2] a classification which ordinarily would require (in accordance with headnote 4 of schedule 4, part 1)[3] that it be appraised on the basis of the American selling price[4] of similar

1. The merchandise was described in the pro forma invoice as "Light Alkyl Alkilate-Dodecylbenzene" and "Heavy Alkyl Alkilate-Tridecylbenzene."

2. Item 403.60 provides for other cyclic organic chemical products having a benzenoid structure.

3. Headnote 4 reads as follows:

4. The ad valorem rates provided in this part shall be based upon the American selling price, as defined in section 402 or 402a of this Act, of any similar competitive article manufactured or produced in the United States. If there is no similar competitive article manufactured or produced in the United States then

the ad valorem rate shall be based upon the United States value, as defined in the said section 402 or 402a.

4. Section 402(e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956:

(e) American selling price.—For the purposes of this section, the American selling price of any article produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the article in condition packed ready for delivery, at which such article is freely sold or, in the absence of sales, offered for sale for

competitive articles. The government, however, found no similar competitive article produced in the United States and resorted to constructed value [5] as the basis of valuation. This resulted in a net appraised value of 38.2 cents per pound.

Plaintiff claims that the proper basis of valuation should have been American selling price, i. e., the 10.2 cents per pound price of domestically produced hard alkylates or alternatively the 11 cents per pound price of domestically produced soft alkylates for future delivery.

The fundamental question in this case is whether domestic hard alkylates were competitive articles similar to the imported soft alkylates. Since the sole noteworthy distinction between the two is that the imported soft alkylate could be used to produce a detergent which was biodegradable after use, the question may be more narrowly phrased as whether the attribute of being biodegradable, that is to say, capable of being naturally decomposed, detracts from the otherwise demonstrably similar and competitive nature of the two.

Aside from the characteristic of being biodegradable, the importation could

hardly be more in conformity with the requirement of headnote 5 of schedule 4, part 1.[6] In virtually all aspects (and in the words of the headnote) it " * * * accomplishes results substantially equal to those accomplished by the domestic product when used in substantially the same manner." In fact, the imported soft alkylate accomplishes the same result in use in a laundry detergent as does the domestic hard alkylate. The competitive nature of the two could hardly be more direct in that the soft alkylate was specifically developed as an alternative to hard alkylates, was intended for use by detergent manufacturers in producing the same detergent products hitherto produced and did, at a comparable price, enter into a rivalry with hard alkylates. In fact, the confrontation between the two was so direct that the soft alkylates virtually replaced the hard alkylates.

Defendant stresses the biodegradable nature of the importation as indicating the creation of a new and dissimilar product. While I would not, in any way, lessen the significance of the development of a detergent ingredient which did not pose a pollution threat to this nation's waters, I do not consider the

domestic consumption in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such article when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

5. Section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956:

(d) Constructed value.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing

appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

6. Headnote 5 reads as follows:

5. For the purposes of this part, any product provided for in this part shall be considered similar to, or competitive with, any imported product which accomplishes results substantially equal to those accomplished by the domestic product when used in substantially the same manner.

development of the added feature to have altered the fundamental similarity in use between "polluting" and "nonpolluting" detergents and the parallel similarity of use between their "soft" and "hard" alkylate ingredients. The biodegradable quality of the importation is of importance only *after use*, in the disposal phase, a circumstance which I do not think should control a decision as to similarity and competitiveness *in use*. The biodegradable attribute is a desirable additional feature, not a primary function of the importation, and I understand the tariff schedule's emphasis here to be on primary function.

■ Furthermore, I read the language of headnotes 4 and 5, *supra*, as being relatively unconcerned with unessential or nonfunctional differences between the imported product and the domestic product. This undoubtedly derives from the fact that valuation by American selling price was intended to protect the manufacturers of certain domestic products vis-à-vis similar competing imported products. *Albert F. Maurer Co. v. United States*, 51 CCPA 114, 119, C.A.D. 845 (1964).

In the *Maurer* case, certain Brazilian rubber overshoes were held to be similar to certain domestic rubber overshoes despite the importation's superior features. The appellate court stated, at page 120, that "[t]he fact that the modern appearance and possible advantages of the imported rubbers may make them *better* in the eyes of and preferred by some customers only serves to make them *more* competitive and is but added reason to preserve the economic protection contemplated by Congress in enacting section 336."

■ Although in the present circumstances the effect of utilizing American selling price happens to result in a lower valuation of this merchandise, that is no reason to demand a degree of similarity which surpasses that previously applied and which, when all is said and done, is hardly less than a demand for exactness of identity. In my opinion the requisite similarity and competitiveness exist between the imported alkylates and the domestic alkylates to warrant using the selling price of the domestic product for valuation purposes. See generally, *A. Zerkowitz & Co., Inc. v. United States*, 58 CCPA 60, C.A.D. 1005, 435 F.2d 576 (1970).

Since the evidence herein clearly establishes that the usual wholesale quantity for domestic alkylates was in bulk, i. e., tank car, tank truck or barge, and that the uniform nationwide price at the relevant time was 10.2 cents per pound f. o. b. plant, that is the correct dutiable value for this merchandise. Consequently, it is not necessary to discuss plaintiff's alternative ground for valuation based on the price for future delivery of domestic soft alkylates.

It is therefore,

ORDERED that plaintiff's motion for summary judgment be, and the same hereby is, granted, and the merchandise involved herein be appraised on the basis of American selling price under section 402(e) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at a value of 10.2 cents per pound.